Dear Secretary Scott,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Do the conditions or requirements of House Bill 2542 (which require the Commissioners of the Land Office, in making decisions on investment of permanent school funds in property related to Texoma State Park and Lake Texoma Lodge, to consult with existing concessionaires in and around the park, and give such concessionaires opportunities to participate in business opportunities resulting from such investment), cause the Commissioners to violate their duties and responsibilities as established under the Oklahoma Enabling Act and the Oklahoma Constitution?
¶ 1 House Bill 2542 was enacted by the 2004 Legislature, becoming effective on the date of the Governor's approval, June 3, 2004. See 2004 Okla. Sess. Law Serv. ch. 394, § 1 (to be codified at 64 O.S. Supp. 2004, § 51.1[64-51.1]). Section 1(A) authorizes the Commissioners of the Land Office ("CLO") to invest up to 3% of the total value of permanent school funds under CLO control in "real property owned or acquired by the State of Oklahoma or the Oklahoma Tourism and Recreation Department and under the jurisdiction of the Oklahoma Tourism and Recreation Commission."Id. Section 1, in pertinent part, provides:
 D. Any investment in or acquisition, exchange or grant of any real property by the Commissioners of the Land Office relating to the Texoma State Park, Lake Texoma Lodge or any real property in the area owned by the Oklahoma Tourism and Recreation Department shall be subject to the following provisions:
. . . .
 5. Existing concessionaires in and around the park shall be consulted and given opportunities to participate in any and all business opportunities and improvements resulting from such investment in or acquisition, exchange or grant of real property. The private investments of existing concessionaires in and around the park shall be given due consideration by any state agency that is a party to any investment in or acquisition, exchange or grant of real property authorized by this act[.]
Id.
¶ 2 You advised that the Lake Texoma Lodge, Texoma State Park and various lands around these facilities are owned by the Oklahoma Tourism and Recreation Department, and a variety of other governmental and private owners, including the United States Corps of Engineers. Pursuant to legislation the CLO is authorized to purchase these lands thereby consolidating ownership, and to develop the property for recreational, residential and commercial use under a unified, comprehensive plan. You express concerns, however, over the legality of parts of the legislation dealing with treatment of concession operators. To analyze the legislation, it is helpful to first recap the role of the CLO in state government, then focus on the nature of the legislation itself.
 The School Land Trust And The Commissioners Of The Land Office
¶ 3 Your question deals with the School Land Trust which is administered by the CLO. In Oklahoma Education Association v.Nigh, 642 P.2d 230, 236 (Okla. 1982), the Oklahoma Supreme Court described the nature of the School Land Trust and the duty of the State of Oklahoma as Trustee. The court held that the State has an irrevocable duty, as Trustee, to manage the trust estate for the exclusive benefit of the beneficiary common schools and educational institutions:
 The School Lands Trust, administered by the Commissioners of the Land Office, for the State as Trustee, consists of certain lands and funds granted to the State of Oklahoma upon its admission into the Union by the Enabling Act. The gift of these lands and funds under the Enabling Act was accepted irrevocably by the people of Oklahoma, and such acceptance was set out in the Oklahoma Constitution under Article XI, Section 1. These acceptance provisions of the Oklahoma Constitution and the Enabling Act constitute an irrevocable compact between the United States and Oklahoma, for the benefit of the common schools, which cannot be altered or abrogated. No disposition of such lands or funds can be made that conflict either with the terms and purposes of the grant in the Enabling Act or the provisions of the Constitution relating to such land and funds. The State has an irrevocable duty, as Trustee, to manage the trust estate for the exclusive benefit of the beneficiaries, and return full value from the use and disposition of the trust property.
Id. at 235 (emphasis added) (footnotes omitted).
¶ 4 The court went on to conclude that the expressed designation of the school lands and funds as a "sacred trust" has the effect of "irrevocably incorporating into the Enabling Act, Oklahoma Constitution, and conditions of the grant, all of the rules of law and duties governing the administration of trusts."Id. at 236.
¶ 5 The permanent school fund is managed and invested by the Governor, Lieutenant Governor, State Auditor and Inspector, Superintendent of Public Instruction, and the President of the Board of Agriculture, acting as the CLO. Okla. Const. art. VI, § 32(A); Okla. Const. art. XI, § 6(B); 64 O.S. 2001, §§ 1-1.3. The department of the CLO is administered by the Secretary appointed by the Governor, with advice and consent of the CLO board. See id. §§ 2-3.
 Legislative Regulation Of School Land Trust Investments
¶ 6 Under the Constitution, the Legislature shall prescribe rules and regulations for the management of school lands and associated proceeds, as authorized by Article VI, Section 32. TheNigh case held that the Legislature could not alter or diminish the State's duty as Trustee, holding:
 No Act of the Legislature can validly alter, modify or diminish the State's duty as Trustee of the school land trust to administer it in a manner most beneficial to the trust estate and in a manner which obtains the maximum benefit in return from the use of trust property or loan of trust funds.
Nigh, 642 P.2d at 236 (emphasis added).
¶ 7 Emphasizing the limit on the Legislature's power to regulate the activities of the CLO, the court went on to state:
 While the Legislature does have the power to, and may, regulate the activities of the Commissioners, it can neither abridge nor impair their freedom to function in utmost good faith in the day-to-day discharge of their public obligation as managers of the trust estate and while acting on behalf of the State as Trustee.
Nigh, 642 P.2d at 238 (emphasis added).
¶ 8 The court, concluding that the purpose of the legislative regulation was to protect the trust assets and obtain maximum return, addressed why the framers authorized the Legislature to make rules and regulations to govern the administration of the School Land Trust, stating:
 Of course, the natural question to ask is, why or for what reason did the framers of the Enabling Act authorize the Legislature to make rules and regulations to govern the administration of the trust? An analysis of the language employed in the Enabling Act provides a rather clear answer-the intent was to vest authority in the Legislature to
establish statutory rules and regulations designed to (1) attain the trust goals-protection of assets
coupled with maximum return; and (2) provide standards to foster even-handed and proper administration of the trust.
Nigh, 642 P.2d at 237 (emphasis added).
 Unconstitutionality Of Restrictions In 2004 Okla. Sess. Laws ch. 394, § 1(D)(5) On Investment Of School Land Trust Funds
¶ 9 You ask, in essence, if the requirements that the CLO, when investing trust funds in land located in the Texoma State Park and State Texoma Lodge must consult with existing concessionaires in and around the park, and give such concessionaires opportunities to participate in business opportunities resulting from such investments are unconstitutional in light of the State's duty, as Trustee of the School Land Trust. See
2004 Okla. Sess. Laws ch. 394, § 1(D)(5) (to be codified at 64 O.S. Supp. 2004, § 51.1[64-51.1](D)(5). For the reasons discussed below, we conclude that those legislative requirements are unconstitutional.
¶ 10 The CLO is required to manage school lands and funds in the permanent common school fund as a "sacred trust." Okla. Const. art. XI, § 1; Okla. Const. art. VI, § 32(A); Nigh,642 P.2d at 236. Further, the Constitution requires that:
 B. The Commissioners of the Land Office shall be responsible for the investment of the permanent common school and other educational funds, and public building funds solely in the best interests of the beneficiaries and:
 1. For the exclusive purpose of providing maximum benefits to current and future beneficiaries, and defraying reasonable expenses of administering the trust funds;
 2. With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like enterprise of a like character and like aim would use[.]
Okla. Const. art. XI, § 6 (emphasis added)
¶ 11 As noted above, Nigh held that no act of the Legislature can validly change the State's duty to manage the School Land Trust for the exclusive benefit of the trust's beneficiaries — the common schools — and to obtain the maximum benefit from the investment of trust funds. The court has also held that the Legislature may not enact laws which conflict with the terms and purpose of the grant in the Enabling Act establishing the school trust lands or modify, restrict or change its regulations. Stateex rel. Williamson v. Comm'rs of the Land Office,301 P.2d 655, 659 (Okla. 1956). Thus, legislation which restricts the ability of the CLO to invest its funds for maximum return or which restricts the ability of the CLO to act "solely in the best interests of the beneficiaries" is prohibited. See A.G. Opin. 02-36, at 213.
¶ 12 The 2004 Okla. Sess. Law Serv. ch. 394, § 1(A) expressly authorizes investment of permanent school funds (not to exceed 3% of the total amount of the fund) in Texoma property, and places other restrictions on such investment. It is one of these "other restrictions" that is being questioned. Subsection (D)(5) provides that existing concessionaires in and around the park"shall be consulted and given opportunities to participate inany and all business opportunities and improvements resultingfrom such investment in . . . real property." Id. (to be codified at 64 O.S. Supp. 2004, § 51.1[64-51.1](D)(5)) (emphasis added). Further, "[t]he private investments of existing concessionaires in and around the park shall be given due consideration by any state agency that is a party to any investment in . . . real property authorized by this act[.]" Id. (emphasis added).
¶ 13 By the plain language of the legislation, (1) the CLO must consult with all existing concessionaires in and around the park regarding such investments by the CLO, (2) the CLO must take into account the private investments of existing concessionaires when investing in park land, and (3) the CLO must give all existing concessionaires an opportunity to participate in any and all business opportunities and improvements resulting from the CLO's investment in park properties.
¶ 14 These legislatively-imposed provisions require, in effect, that when investing in land at Texoma State Park, including an investment in the Lake Texoma Lodge, the CLO may not plan and manage its investment solely for the benefit of the beneficiaries of the School Land Trust. On the contrary, the legislation requires that the interests of existing concessionaires in the area be taken into account, as those concessionaires must be consulted. The investments the concessionaires have made in the area must be considered, and the concessionaires must be afforded an opportunity to participate in any and all business opportunities and improvements resulting from the CLO's investment. In short, the statute-contrary to the teachings of the Nigh case, the Oklahoma Enabling Act and Oklahoma Constitution-requires that investments in such park lands by the CLO be done not only for the benefit of the trust beneficiaries, but also for the benefit of existing concessionaires in the area.
¶ 15 The regulations imposed by the Legislature are thus not designed to attain the trust's primary goals-protection of the Trustee's assets, and the maximum return on investment solely for the benefit of the common schools and educational institutions who are the beneficiaries of the trust. As such, the requirement that investments be made with the interests of the existing concessionaires in mind constitutes an unconstitutional modification or diminishment of the State's duty, as Trustee, to administer this trust in the manner most beneficial to the trust estate, and to obtain the maximum benefit in return solely for the benefit of the trust beneficiaries.
¶ 16 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Oklahoma Enabling Act and the Oklahoma Constitution require the Commissioners of the Land Office ("CLO"), in making decisions regarding investment of permanent school funds, to seek maximum benefit from the use of such trust funds, subject to standards applicable to fiduciaries. Oklahoma Enabling Act, ch. 3335, §§ 7-12, 34 Stat. 267, 272-75 (1906); Okla. Const. art. XI, § 1; Okla. Const. art. XI, § 6(B); Okla. Educ. Ass'n v. Nigh, 642 P.2d 230, 235-36 (Okla. 1982).
 2. While under the Enabling Act and the Constitution, the Legislature is empowered to make rules and regulations for the use of monies in the permanent School Land Fund, and to provide by law conditions upon which the permanent common school fund may be loaned or invested, it may not make rules for investment which impair or restrict the ability of the CLO to invest its funds for maximum return. Oklahoma Enabling Act, ch. 3335, §§ 9, 10, 34 Stat. 272-75 (1906); Okla. Const. art. XI, § 6; Okla. Const. art. VI, § 32; Okla. Educ. Ass'n v. Nigh, 642 P.2d 230, 236 (Okla. 1982); A.G. Opin. 02-36, at 213.
 3. Subsection (D)(5) of the 2004 Okla. Sess. Law Serv. ch. 394, § 1 (to be codified at 64 O.S. Supp. 2004, § 51.1[64-51.1](D)(5)), which requires the CLO to consult with private concessionaires before making its investment decisions and give such concessionaires opportunity to participate in CLO investments, impairs the ability of the CLO to invest its funds solely for the benefit of the beneficiaries of the School Land Trust for maximum return. Thus, the legislation violates applicable provisions of the Oklahoma Constitution and the Enabling Act, and is unconstitutional. Oklahoma Enabling Act, 34 Stat. 272, §§ 7, 9, 10 (1906); Okla. Const. art. VI, § 32; Okla. Const. art. XI, § 6; 64 O.S. 2001, §§ 1-1.3.
 W.A. DREW EDMONDSON Attorney General Of Oklahoma
 LYNN C. ROGERS Assistant Attorney General